UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELA ABNEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:14CV01330 AGF |
| CITY OF ST. CHARLES, MO., et al., | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiff's amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. (Doc. No. 23.) For the reasons set forth below, the motion shall be granted in part and denied in part.

# BACKGROUND

Plaintiff Pamela Abney brought this action against Defendants City of St. Charles, Missouri (the "City"); police officer Timothy Hancock, in his individual and official capacities; and Chief of Police Randall D. McKinley, in his individual and official capacities, alleging federal and state law violations in connection with her arrest and detainment by Defendants. The following facts are alleged in Plaintiff's amended complaint.

On or about November 21, 2012, Defendants arrested and detained Plaintiff, who is deaf, upon charges of assault on a law enforcement officer, interfering with the duties of a police officer, and resisting arrest. Defendants were informed of Plaintiff's disability

before, during, and after the arrest by Plaintiff's sister, and Plaintiff's sister made repeated demands for an interpreter for Plaintiff. Officer Hancock used force during Plaintiff's arrest, causing her physical injuries, including a concussion and/or brain injury, a sprained tailbone, and a sprained wrist. Defendants did not provide Plaintiff an interpreter, did not attempt to communicate with Plaintiff or offer her any means by which she could communicate during detention, did not inform Plaintiff of the reason for her arrest, and did not provide the plaintiff with the required "Miranda warnings." (Doc. No. 18 at 2, 4, 11.)

Plaintiff brought this action on July 29, 2014. In her amended complaint, Plaintiff argues that Defendants violated Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132 (Count I); Section 504 of the Rehabilitation Act (the "Rehab Act"), 29 U.S.C. § 794 (Count II); 42 U.S.C. § 1983 for use of excessive force and failure to train a police officer (Counts III and IV); and the Missouri Human Rights Act (the "MHRA"), Mo. Rev. Stat. § 213.065 (Count V). (Doc. No. 18.)

Defendants filed this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 23.) Defendants argue that in all five Counts, Plaintiff fails to plead sufficient facts to state a plausible claim. Additionally, Defendants raise the following arguments: Plaintiff's ADA and Rehab Act claims against Defendants Hancock and McKinley in Counts I and II should be dismissed because neither statutory scheme contemplates individual liability; Plaintiff's § 1983 excessive force claim against all Defendants in Count III is barred by governmental and qualified immunity, and does not entitle Plaintiff to punitive damages; Plaintiff's failure to train claim against all Defendants in Count IV

2

is barred by sovereign and official immunity; and Plaintiff's MHRA claim in Count V is barred for failure to exhaust administrative remedies.

In response to the motion to dismiss, Plaintiff argues that her claims are plausible and supported by the facts. Plaintiff contends that the ADA and Rehab Act claims against Hancock and McKinley in Counts I and II should not be dismissed because these Defendants are sued solely in their official capacities. Likewise, Plaintiff argues that her excessive force claim in Count III is not barred by governmental immunity because it is asserted solely against Hancock in his individual capacity, and Hancock is not entitled to qualified immunity because he violated the clearly established Fourth Amendment right to be free from excessive force. Plaintiff also argues she is entitled to punitive damages for her excessive force claim because Hancock exhibited a reckless and/or callous indifference to her Fourth Amendment rights. Next, Plaintiff argues that her failure to train claim in Count IV is a civil rights action against the City for violation of Plaintiff's constitutional rights under § 1983, and not a state law negligence action as interpreted by Defendants, and therefore the state law doctrines of sovereign and official immunity do not apply. Plaintiff states that while she "does not have sufficient information at this time to plead Count IV with more specificity regarding Defendants' policies," she "believes discovery in this case will reveal further information regarding the policies and procedures of the Defendants." (Doc. No. 26 at 10.) Finally, Plaintiff argues that failure to exhaust administrative remedies does not bar her MHRA claim in Count V.

In their reply, Defendants again argue that Plaintiff has alleged insufficient facts to support any claim; that Plaintiff's ADA and Rehab Act claims against Hancock and McKinley in Counts I and II fail because these statutes do not contemplate individual liability, even if the claims are characterized as claims against individuals in their "official capacities"; that Plaintiff's § 1983 claim in Count III against Hancock in his individual capacity is barred by qualified immunity; that a construction of Count IV's "failure to train" claim as a § 1983 action is untenable, and regardless, a single incident of allegedly unconstitutional conduct cannot form the basis for imposing § 1983 liability against the City; and that the exhaustion of administrative relief is a mandatory prerequisite for Plaintiff's MHRA claim in Count V.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster; this standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. While the court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). However, the federal pleading

4

rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

**ADA and Rehab Act Claims (Counts I and II)**

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of the ADA, a plaintiff must show (1) that she has a disability; (2) that she is otherwise qualified for the benefit or service in question; and (3) that she was excluded from the benefit due to discrimination solely on the basis of the disability. *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998). Similarly, to prevail on a claim under § 504 of the Rehab Act, a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; (3) she was discriminated against based on her disability. 29 U.S.C. § 794(a); *Gorman*, 152 F.3d at 911. The ADA and the Rehab Act are "similar in substance" and, with the exception of the Rehab Act's federal funding requirement, "cases interpreting either are applicable and interchangeable." *Id*. at 912.

The Eighth Circuit has "construed Title II of the ADA and its implementing regulations as requiring that qualified persons with disabilities receive effective communication that results in 'meaningful access' to a public entity's services," including, if circumstances require, "the use of auxiliary aids and services, such as

interpreters for the hearing impaired" in connection with a deaf plaintiff's arrest and detention. *Bahl v. County of Ramsey*, 695 F.3d 778, 784 (8th Cir. 2012); *see also Gorman*, 152 F.3d at 913 ("Gorman's allegations that the defendants denied him the benefit of post-arrest transportation appropriate in light of his disability fall within the framework of both Title II of the ADA and § 504 of the Rehabilitation Act."). However, whether the police denied a plaintiff effective communication, or "failed to make reasonable modifications to their procedures to ensure effective communication, thereby subjecting [a plaintiff] to discrimination," is a "highly fact-specific" question that "varies depending on the circumstances of each case, including the exigent circumstances presented by criminal activity and safety concerns." *Bahl*, 695 F.3d at 784.

Plaintiff alleges that Defendants "failed to furnish appropriate auxiliary aids, such as a qualified interpreter," and failed to effectively communicate with her during arrest, charging, and interrogation. Plaintiff has therefore stated a plausible claim under the ADA and Rehab Act. Whether Plaintiff can prove that she was denied effective communication and discriminated against requires further development of the record.

Although Defendants argue that neither Title II of the ADA nor § 504 of the Rehab Act contemplates claims against officers in their individual capacities, the Court need not resolve this question because Counts I and II are asserted solely against the City and against Defendants Hancock and McKinley in their official capacities.[1] The ADA

---

[1] Defendants correctly note that Plaintiff broadly references all Defendants in her requests for relief under each Count. However, elsewhere in her amended complaint, Plaintiff specifies that certain Counts are asserted solely against certain Defendants. For instance, Plaintiff states that Counts I and II are asserted solely against the City and

6

and Rehab Act permit such claims. *See Randolph v. Rodgers*, 253 F.3d 342, 343 (8th Cir. 2001) (recognizing ADA and Rehab Act claims against prison officials in their official capacities for failure to provide a deaf inmate with a sign-language interpreter during disciplinary proceedings); *Gorman*, 152 F.3d at 913 (permitting ADA and Rehab Act claims against police officers and board members in official capacities because these defendants were "representatives of the Kansas City police establishment, a department of local government and a public entity"). The Court will therefore deny Defendants' motion to dismiss Counts I and II.

**Section 1983 Excessive Force Claim (Count III)**

In Count III, Plaintiff asserts a § 1983 claim based on a violation of the Fourth Amendment right to be free from excessive force, seeking compensatory and punitive damages. This claim requires proof that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 394-95(1989).

Plaintiff purports to assert Count III against both Defendants Hancock and McKinley in their individual capacities. (Doc. No. 18 at 13.) However, in her amended complaint and in response to the motion to dismiss, Plaintiff alleges liability solely with respect to Hancock. *See, e.g.,* Doc. 26 at 6-9.) Therefore, the Court will dismiss Plaintiff's claim against McKinley in Count III.

---

against Defendants Hancock and McKinley in their official capacities. (Doc. No. 18 at 3-4, 8-9.) Plaintiff confirms this in her response brief. (Doc. No. 26 at 5.)

With regard to Plaintiff's claim against Hancock in his individual capacity, Defendants argue that this claim is barred by qualified immunity. "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of clearly established statutory or constitutional rights of which a reasonable person would have known." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). In other words, to survive Hancock's motion to dismiss Count III on the basis of qualified immunity, Plaintiff must plead "sufficient facts which, when construed in the light most favorable to her, show (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the violation." *Montoya v. City of Flandreau*, 669 F.3d 867, 872 (8th Cir. 2012). Although the right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person, in the context of qualified immunity, the right must be "clearly established" in a more particularized sense: "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*.

In her response to the motion to dismiss, Plaintiff argues that her claim is analogous to *Montoya*, in which the court found an officer not protected by qualified immunity when he "perform[ed] a 'leg sweep' and thr[e]w to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee." *Id*. at 873. In line with this theory, Plaintiff alleges for the first time several additional facts surrounding her encounter with Hancock,

8

including that Hancock was attempting to arrest Plaintiff's sister when Plaintiff tried to retrieve her sister's dropped bag; that Hancock turned to Plaintiff at this time and threw her to the ground; that due to her disability, Plaintiff could not hear what was being said and did not understand what was happening; and that when Plaintiff tried to stand up, "Hancock then pressed his knee into Plaintiff's lower back and tailbone with such force that the Plaintiff suffered a concussion/brain injury, a sprained tailbone and a sprained wrist." (Doc. No. 26 at 7.) Unfortunately, Plaintiff has not pleaded these facts. Therefore, as it stands, Plaintiff's first amended complaint fails to state a plausible § 1983 claim against Hancock that is not barred by qualified immunity, and the Court will dismiss Count III. However, the Court will do so without prejudice to Plaintiff's right to seek to amend her pleading.[2]

**Failure to Train (Count IV)**

Plaintiff asserts Count IV solely against the City for "failure to train police officer[s]." (Doc. No. 18 at 16.) Although Defendants treat this claim as a state law negligence claim, subject to state law immunity doctrines, Plaintiff suggests that the claim was intended to be a federal civil rights claim against the City, under § 1983, for violation of her constitutional rights. Because Count IV specifically discusses violations of Plaintiff's federal rights and references § 1983 caselaw discussing municipal liability, such as *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Court will

---

[2] To the extent Plaintiff reasserts her request for punitive damages in an amended complaint, the Court notes that punitive damages may be awarded in a § 1983 action, but only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

deem Count IV as a § 1983 claim against the City.  *See* Doc. No. 18 at 17; *Johnson*, 135 S. Ct. at 346 (holding that plaintiffs' failure to specifically invoke § 1983 did not render their complaint deficient).  Therefore, the Court need not address Defendants' state law sovereign and official immunity arguments with respect to this count.

A municipality may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  But municipalities are only liable for their own illegal acts; they may not be held vicariously liable for their employees' actions.  *Id; see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) ("As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.").

Thus, plaintiffs seeking to impose § 1983 liability on local governments must prove that "action pursuant to official municipal policy" caused their injury.  *Connick*, 131 S. Ct. at 1359.  "In limited circumstances, a local government may be liable for its decision not to train certain employees about their legal duty to avoid violating citizens' rights."  *Folkerts v. City of Waverly*, 707 F.3d 975, 982 (8th Cir. 2013).  However, "[t]he failure to train must rise to 'deliberate indifference' to be actionable."  *Id.*  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick*, 131 S. Ct. at 1360. Moreover, the plaintiff must demonstrate that the lack of training actually caused the constitutional violation in this case.  *Id.* at 1359.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to show deliberate indifference for purposes of failure to train." *Id.* "It may be, however, that 'evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'" *Folkerts*, 707 F.3d at 982 (citing *Brown*, 520 U.S. at 409). In this "narrow range of circumstances," the Supreme Court has held that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 131 S. Ct. at 1361.

Here, Plaintiff has not alleged a pattern of similar constitutional violations, so she must plausibly demonstrate that this case falls within the "narrow range of circumstances" in which the municipality has failed to train its employees to handle recurring situations presenting a patently obvious risk of civil rights violations. The unconstitutional consequences of failing to train subordinate law enforcement officers to properly interact with suspects with disabilities, and to refrain from excessive force, may well be patently obvious. *See Sampson v. Schenck*, 973 F. Supp. 2d 1058, 1066 (D. Neb. 2013). However, Plaintiff has not pleaded any facts to demonstrate that the City has failed to train its police officers in this regard. Indeed, Plaintiff concedes that she cannot plead the City's policies, or lack thereof, with any specificity at this time, though she believes discovery will reveal evidence of this claim. Therefore, the Court will dismiss

Count IV, without prejudice to Plaintiff's right to seek to amend her complaint after discovery.

**MHRA Claim (Count V)**

In Count V, Plaintiff alleges a violation of § 213.065 of the MHRA, which makes it an unlawful practice for any person to refuse, withhold from, or deny any other person "any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation . . . or to segregate or discriminate against any such person in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or disability," or to attempt to do so. Mo. Rev. Stat. § 213.065.

Prior to initiating any civil lawsuit under Mo. Rev. Stat. §213.065, a complainant must file a complaint with the Missouri Commission on Human Rights (MCHR) and obtain a right to sue. Mo. Rev. Stat. §213.111. The discrimination charge must be filed with the MCHR within 180 days of the date of the alleged act of discrimination. Mo. Rev. Stat. §213.075. This requirement is a "prerequisite to seeking judicial relief." *Igoe v. Dep't of Labor & Indus. Relations*, 152 S.W.3d 284, 287 (Mo. 2005); *see also Reed v. McDonald's Corp.*, 363 S.W.3d 134, 143 (Mo. Ct. App. 2012) ("The MHRA requires that all administrative remedies be exhausted before petitioning the courts for relief.").

Plaintiff does not dispute that she has never filed a complaint with the MCHR, and as more than two years have passed since the alleged act of discrimination, it is too late to do so now. Therefore, the Court will dismiss Count V with prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. No. 23.) The motion is **GRANTED** with respect to Counts III, IV, and V. Counts III and IV are **DISMISSED without prejudice**; Count V is **DISMISSED with prejudice**. The motion is **DENIED** with respect to Counts I and II.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2015.